GEARHART *v.* MCALESTER FUEL COMPANY.

4-5773 136 S. W. 2d 679

Opinion delivered February 12, 1940.

*Rose, Loughborough, Dobyns & House,* for appellant.

*Miles & Young* and *Pryor & Pryor,* for appellee.

McHANEY, J. Appellant, James K. Gearhart, Jr., is the son of James K. Gearhart, Sr., who died testate in March, 1933, and, through his mother, said appellant inherited an undivided 1/3 interest in the land in controversy. The other appellants are the widow and the heirs at law of Fremont Stokes, who died intestate in April, 1934, and inherited another undivided 1/3 interest in the land in controversy. They brought separate actions to compel the appellee to account to them for the rental value of a certain coal mine located on the property in controversy, including its shafts, tunnels and equipment. Appellee defended the actions on two or more grounds, some of which will be later herein discussed. The cases were consolidated for trial which resulted in a decree dismissing the complaints for want of equity.

In the year 1907, James K. Gearhart, Sr., Fremont Stokes and C. H. Langford, being the owners of ex-

tensive coal properties in Johnson county, Arkansas, organized a corporation known as the Pennsylvania Anthracite Coal Company, to which they leased most of their coal properties and to which they sold and conveyed the surface of an eighty acre tract also covered by the lease. In this lease the lessors dealt very nicely with themselves, for by its terms the lessee was required to pay them a royalty of 25 cents per ton and to mine a minimum of 60,000 tons yearly, making a minimum royalty of $15,000. On May 20, 1909, the parties entered into a new twenty-five year lease agreement by which the minimum tonnage required to be mined annually was reduced to 40,000 tons, or a minimum annual royalty of $10,000. On the same date of this new lease, the company conveyed back to Gearhart, Stokes and Langford the surface of 20 acres of land, on which the coal mine is situated and which is the land in controversy, described as N½ NW SW - 21 - 9 - 24, Johnson county, and the deed recites it conveys "the surface only" in the above described land. Said deed contained this reservation immediately following the granting clause: "Reserving nevertheless unto the parties of the first part and to its successors and assigns the right at any and all times to enter upon said lands to mine, remove and carry away the coal and the mineral deposits thereunder now leased by said company, and for that purpose to sink shafts and erect such buildings and machinery as may be necessary to successful operation of a mine and removing the coal leased as aforesaid. With the further right to use such openings and improvements for the purposes incident to the mining and removing the coal in any adjoining or nearly contiguous lands that may be owned and leased by said company, its successors and assigns, with further right to sell or remove at the expiration of the lease now held upon said land, or within a reasonable time thereafter any buildings and machinery placed by said company, its successors and assigns upon said land."

On November 18, 1910, the Pennsylvania Anthracite Coal Company conveyed all its interest in this twenty-

five year lease to Arkansas Anthracite Coal & Land Company. On March 16, 1912, said Langford conveyed all his interest as lessor in said lease and his interest in the 20 acre tract to Gearhart and Stokes, who on June 2, 1913, conveyed Langford's interest to the last above named company, and it later went through bankruptcy, its assets including said lease and reservation in said deed of May 20, 1909, passed by mesne conveyances to appellee under date of June 19, 1934.

The trial court found "That the reservation of the right of the grantor, his successors or assigns to enter upon the land conveyed in the deed—dated May 20, 1909, considered in connection with the lease of the same date, gave to the grantor and its successor, the defendant, the right to use the premises and property therein described as reserved and for the purposes therein set out on lands owned or leased by the defendant adjacent or nearly contiguous to the property conveyed acquired by it prior to April 1, 1934, the expiration date of said lease, free of rent to the plaintiffs."

As to this reservation in said deed of May 20, 1909, appellant makes two contentions that the court erred in so holding: (1) that the Pennsylvania Anthracite Coal Company, the grantor, was without power to reserve therein the perpetual right to mine coal through the shaft and tunnels now on the property; and (2) that the language of the reservation limits it to the life of the lease executed at the same time.

(1) The argument advanced with reference to the power to make the reservation is that it owned the surface rights only and could not reserve rights to use the shaft and tunnels constructed far below the surface. It appears to be undisputed that all the mineable coal under this 20 acre tract has been removed and was removed some time prior to May 20, 1934, expiration date of said lease, and that appellee and its predecessors, have, both before and after the expiration date of said lease, used the shaft, entries and tunnels under this 20 acre tract to mine coal on other adjacent lands. We think the word "surface," as used in the conveyances

above mentioned, means something more than that portion of the land which is or may be used for agricultural purposes. It means not only the actual top of the ground, but also all the earth substructure, except the coal therein, the right to mine and recover which was granted in the lease. The parties themselves may have thought, as others have, that the lease conveyed the fee to the coal in place, but such is not the law in this state. *Goodson* v. *Comet Coal Co.*, 182 Ark. 192, 31 S. W. 2d 293. In that case the owner of the fee, Thompson, sold to Goodson, with this reservation: "Reserving all coal, oil and gas and mineral with the usual mining privileges. Grantor reserves the right to use the surface about the mine opening for mining purposes during the life of said coal mine." Thompson leased the minerals to Comet Coal Co., which was mining coal from this and other lands. Goodson objected to coal being hauled from other lands through the tunnels under his land. In denying Goodson injunctive relief this court said: "The rule, supported by the great weight of authority, is that the owner of coal in place, as Thompson was under his deed from R. G. Parrott, has the absolute right until all the coal is exhausted to use the passages opened for its removal for any and all purposes whatever, including the right to transport coal over the underground passages and out of the entry, having due regard for the rights of the surface owner."

We think this case is authority for the holding that the grantor had the power to make the reservation, since it owned not only the surface, but the right to mine the coal under the surface.

(2) Nor can we agree with appellant that the reservation in the deed, above quoted, is limited to the life of the lease. The wording thereof indicates that the draftsman had three purposes in view for the protection of the grantor, its successors and assigns: 1. To protect and safeguard its right at any and all times to enter upon said lands to mine the coal under it, and for that purpose to sink shafts and erect buildings and machinery. 2. To use such improvements for the

mining of coal in "any adjoining or nearly contiguous land." In other words to use its facilities on the granted lands for mining coal on other lands. 3. The right to sell or remove its buildings and machinery at the expiration of said lease or within a reasonable time thereafter.

The lease provides that it shall run for a period of 25 years, "or until all the merchantable coal in the premises hereby demised is exhausted," and the right to remove coal in any adjoining or nearly contiguous land that may be owned or leased by the lessee, through "any subterranean process, ways and openings" is reserved therein. Both the lease and the reservation in the deed contemplated that the lessee and its successors should have the right to mine the coal in the leased premises and in the adjacent lands owned or leased by it, and if all the mineable coal in either had not been recovered during the period limited, mining operations could continue until the coal in each was exhausted.

This view is strengthened, if not made conclusive, by the letter of James K. Gearhart, Sr., written to Mr. Puterbaugh, president of appellee, under date of September 15, 1928, in which he said, in part: "The lease expiring 5/20/34 provides it shall be good until that time or until all the mineable coal has been removed. When all coal is mined out or paid for Stokes is through. The deed covering the 20 acres reserves the right to use it for mining coal from contiguous lands and says nothing as to when this right shall terminate—I cannot see why the company can not use these twenty acres forever under reservation clause in said deed, and reading deed in conjunction with lease I believe we have right to use mine workings for mining contiguous coal."

While this letter may not be competent against the heirs of Stokes, it is at least a declaration against Gearhart's interest as grantee in the deed and as lessor in the lease, and in favor of his interest as president of the lessee and grantor. It may also not be competent as evidence as it is the expression of his opinion on a question of law. We copy the above portion of the letter to show that he, with an interest on both sides, construed the

reservation in the deed as we do, when viewed in the light of the lease, executed simultaneously. We therefore, hold that it was the purpose and intent of the parties that this 20 acre tract could be used to mine coal on the leased premises and upon contiguous lands owned or leased by the lessee or grantor, not only for 25 years, but so long as the coal remains unexhausted under either the leased premises or the contiguous lands purchased or leased at any time during the term of the lease.

Having reached this conclusion, it becomes unnecessary to discuss the plea of *res adjudicata* as to Stokes.

Affirmed.