IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-0080

_____

**FILED**

**June 13, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FAITH UNITED METHODIST CHURCH AND CEMETERY
OF TERRA ALTA, WEST VIRGINIA, and
TRINITY UNITED METHODIST CHURCH
OF TERRA ALTA, WEST VIRGINIA
Petitioners

v.

MARVIN D. MORGAN,
Respondent

_____

Appeal from the Circuit Court of Preston County
The Honorable Lawrance S. Miller, Jr., Judge
Civil Action No. 11-C-27

REVERSED AND REMANDED

_____

Submitted: April 16, 2013
Filed: June 13, 2013

Steven L. Shaffer, Esq.
C. Paul Estep, Esq.
Estep & Shaffer, L.C.
Kingwood, West Virginia
Counsel for the Petitioners

J. Thomas Lane, Esq.
C. Seth Wilson, Esq.
Joshua L. Jarrell, Esq.
Bowles Rice McDavid Graff & Love LLP
Morgantown, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      Syllabus Point 1 of *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923), is expressly overruled.

2.      The word "surface," when used in an instrument of conveyance, generally means the exposed area of land, improvements on the land, and any part of the underground actually used by a surface owner as an adjunct to surface use (for example, medium for the roots of growing plants, groundwater, water wells, roads, basements, or construction footings).

3.      Deeds are subject to the principles of interpretation and construction that govern contracts generally.

4.      "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."  Syllabus Point 1, *Cotiga Development Company v. United Fuel Gas Company*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

5.      "In construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith." Syllabus Point 1, *Maddy v. Maddy*, 87 W.Va. 581, 105 S.E. 803 (1921).

6. "Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous." Syllabus Point 9, *Paxton v. Benedum–Trees Oil Co*., 80 W.Va. 187, 94 S.E. 472 (1917).

7. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus Point 3, *Cotiga Development Company v. United Fuel Gas Company*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

8. "Parties are bound by general and ordinary meanings of words used in deeds." Syllabus Point 1, *McDonough Co. v. E.I. DuPont DeNemours & Co., Inc*., 167 W.Va. 611, 280 S.E.2d 246 (1981).

Ketchum, Justice:

In Syllabus Point 1 of *Ramage v. South Penn Oil Co.*,[1] the Court declared that the term "surface," when used as a term of conveyance in a deed, is ambiguous on its face and always subject to modern-day interpretation using parol and other evidence extrinsic to the deed.

In this appeal from the Circuit Court of Preston County, we are asked to examine a 1907 deed of the "surface only" of a tract. The circuit court found the deed was ambiguous, based upon *Ramage*, and relied upon contemporary testimony to interpret the deed. The circuit court concluded that the deed conveying the "surface only" also conveyed an interest in all oil and gas under the tract.

As set forth below, we find that the term "surface," when used as a term of conveyance, is not presumptively ambiguous and does have a definite and certain meaning. We therefore overrule Syllabus Point 1 of *Ramage*, and reverse the circuit court's decision.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The dispute between the parties centers on one question: who owns the oil and gas under a 225 acre tract of land in Preston County, West Virginia? The dispute revolves around the interpretation of a 1907 deed between two siblings.

---

[1] *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923).

In 1869, Calvin C. Forman acquired ownership of the entire 225 acre tract. In 1893, he died intestate leaving seven children as his only heirs. Those seven children – including siblings Walter S. Forman and Florence A. Forman – each inherited an undivided 1/7 fee simple interest in the tract.

By 1902, Walter had acquired the interests of five of his siblings; hence, he was vested with an undivided 6/7 interest in the tract. His sister Florence retained her 1/7 interest. On February 22, 1902, Walter and Florence conveyed by deed "all of the coal upon and under" the tract to two other individuals.[2] Nowhere in the 1902 coal severance deed is there any language suggesting a conveyance of any other minerals, including oil and gas.

---

[2] The coal severance deed, dated February 22, 1902, is from Walter S. Forman (and Zoura A. Forman, his wife) and Florence A. Forman, to W.G. Brown and F.C. Todd. The coal severance deed states, in part:

> the said Grantors do sell, convey, transfer and assign, with covenants of General Warranty, unto the said Grantees, the following described real estate, situate in Portland District, Preston County, West Virginia, on the waters of Roaring Creek and bounded and described as follows: Being all the coal upon and under the following tracts of land . . .

> There is excepted from this conveyance the three foot vein of coal known as the fuel coal for domestic purposes the same being located in the top of the hill and the same that is now open and being worked in said farm, together with the right to dig and sell therefrom for domestic use.

2

The deed under consideration was executed on November 14, 1907. The deed, from Florence to her brother Walter, conveyed her 1/7 interest in "the surface only" of the tract. The 1907 deed contains the following language:

> That in consideration of the sum of Three Hundred Dollars, the receipt of which is hereby acknowledged, the said party of the first part [Florence] does grant unto the said party of the second part [Walter], the following described property, that is to say: Her one-seventh undivided interest *in the surface only* with the hereditaments and appurtenances thereto belonging, (the coal and mining privileges having been previously sold) in the two hundred and twenty-five acre tract of land[.] (Emphasis added.)

The parties now dispute the meaning of the phrase "the surface only" used in the 1907 deed, and ask this Court to discern whether Florence's deed to her brother Walter conveyed any rights to oil, gas, or minerals (other than the previously conveyed coal) underlying the tract.

The subject tract was later conveyed several times. In 1967, respondent Marvin D. Morgan purchased the interest in the 225 acre tract that had been owned by Walter S. Forman.[3] Mr. Morgan contends that he is the sole owner of all oil and gas rights under the tract.

In 1930, Florence Forman died intestate. The petitioners, Faith United Methodist Church and Trinity Methodist Church, are successors to Ms. Forman. The petitioners contend that Florence conveyed "the surface only" of the tract to her brother

---

[3] Respondent Marvin Morgan acquired the tract as a joint tenant with H.E. "Pete" Morgan by deed dated February 7, 1967. H.E. "Pete" Morgan died on September 18, 1969, and sole ownership vested in the respondent pursuant to a survivorship provision.

3

Walter without any mineral rights, and that she retained a 1/7 interest in the oil and gas under the tract at the time of her death. The petitioners therefore assert they now own a portion of that 1/7 interest.

To determine the parties' rights under the 1907 deed, respondent Mr. Morgan filed a declaratory judgment action in the Circuit Court of Preston County on February 7, 2011. The circuit court held a bench trial on September 19, 2011.

Mr. Morgan presented two witnesses at the trial. Neither witness could testify as to facts surrounding the 1907 deed, nor could they shed light on the intent of the parties at the time of the conveyance. The first witness, a non-lawyer landman, testified Florence Forman had never specifically mentioned any oil and gas rights in any conveyance after 1907. The witness could find nothing to show Ms. Forman had ever conveyed, leased, devised, or mortgaged the oil and gas rights. The county assessor testified that the real estate tax assessments showed the coal estate had been severed from the remainder of the 225-acre tract for tax purposes in 1902, but that there was no record indicating the assessor's office had ever imposed a separate tax assessment on the tract for oil or gas rights.

In an order dated November 9, 2011, the circuit court ruled in favor of the respondent, Mr. Morgan, finding he "is the successor in title to Walter Forman and presently owns one hundred percent of the oil and gas underlying" the 225 acre tract. The circuit court declared that the term "the surface only" in the 1907 deed was

4

ambiguous. The circuit court relied upon our holding in *Ramage v. South Penn Oil Co.*,[4] where the Court held in Syllabus Point 1 that the term "surface" in a deed is *always* ambiguous and "is not a definite one capable of a definition of universal application."[5] The *Ramage* Court noted that "the term 'surface' has various meanings"[6] and "does not have a well defined legal meaning when used as the subject of conveyance,"[7] and therefore concluded that, "In our judgment the term is ambiguous."[8] Hence, according to the *Ramage* Court, whenever the word "surface" is used to convey an interest in property, the conveyance is subject to later interpretation by looking beyond the language of the deed and studying the parol evidence surrounding the transaction.

Based upon *Ramage*, the circuit court determined that the 1907 deed conveying "the surface only" was ambiguous on its face and subject to modern-day interpretation. The circuit court then looked to other evidence surrounding the transaction and found that, after 1907, the assessor never entered any interest in the tract for Florence Forman on the land books for taxation. The court also found that, after 1907, there was no evidence Ms. Forman ever conveyed, devised, leased, or mortgaged any interest in the tract. Because Ms. Forman never "demonstrate[d] an intent to retain

---

[4] 94 W.Va. 81, 118 S.E. 162 (1923).

[5] Syllabus Point 1, *Ramage v. South Penn Oil Co.*, *supra*.

[6] 94 W.Va. at 97, 118 S.E. at 169.

[7] 94 W.Va. at 101, 118 S.E. at 170.

[8] *Id*.

5

an ownership interest in the Subject Tract" after 1907, the circuit court determined that she must have intended to convey her entire 1/7 interest to the tract including the oil and gas, and not merely "the surface," to her brother Walter. As a result, the circuit court found that respondent Marvin Morgan purchased the entire 225 acre tract with all of the rights to the oil and gas (less the coal rights conveyed in 1902).

The successors to Ms. Forman, petitioners Faith United Methodist Church and Trinity Methodist Church, now ask this Court to reverse the circuit court's November 9, 2011, order.

## II.
## STANDARD OF REVIEW

This case centers upon the circuit court's interpretation of the 1907 deed. We have stated that the interpretation of a deed, which is not dependent upon extrinsic evidence, is a question of law for a court and not a jury.[9] Accordingly, we review the circuit court's ruling *de novo*.[10]

---

[9] *Snooks v. Wingfield*, 52 W.Va. 441, 444-45, 44 S.E. 277, 278 (1903) ("construction of the deed is matter of law for the court and cannot be left to the jury"); Syllabus Point 7, *Mylius v. Raine-Andrew Lumber Co.*, 69 W.Va. 346, 71 S.E. 404 (1911) ("The construction of a deed, not dependent in any way upon extrinsic evidence, and also of a deed dependent upon extrinsic evidence, when the facts are undisputed, is a question for the court and not for the jury."); *Brady v. Reiner*, 157 W.Va. 10, 29, 198 S.E.2d 812, 824 (1973) (*overruled on other grounds by Board of Church Extension v. Eads*, 159 W.Va. 943, 230 S.E.2d 911 (1976)) ("the construction of a deed is wholly a question of law for the court"). *See also* Syllabus Point 6, *Franklin v. T.H. Lilly Lumber Co.*, 66 W.Va. 164, 66 S.E. 225 (1909) ("It is the province of the court, and not of the jury, to interpret a written contract.").

6

# III.
# ANALYSIS

The petitioners assert that the circuit court erred in finding that the 1907 deed of "the surface only" of the 225 acre tract was ambiguous, and that the deed conveyed the oil and gas to Walter Forman. They argue that the case law in effect at the time the deed was executed should control the deed's interpretation.[11] Specifically, the

---

[10] *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) ("The facts of this case call upon this Court to interpret a written deed. Thus, we apply a *de novo* standard of review to the circuit court's interpretation of the contract.")

[11] There is merit to this argument. First, we have said that, "A deed will be interpreted and construed as of the date of its execution." Syllabus Point 2, *Oresta v. Romano Bros., Inc.*, 137 W.Va. 633, 73 S.E.2d 622 (1952). *See also Bruen v. Thaxton*, 126 W.Va. 330, 340, 28 S.E.2d 59, 64 (1943) ("It goes without saying that the intent of the parties sought to be reached is intent existing at the time the contract was made."). Second, the law existing at the time and place of the making of a deed or contract is usually deemed a part of the contract, as though expressly referred to or incorporated in it. Syllabus Point 1, *Franklin Sugar Refining Co. v. Martin-Nelly Grocery Co.,* 94 W.Va. 504, 119 S.E. 473 (1923) ("The laws which subsist at the time and place where a contract is made and to be performed enter into and become a part of it to the same extent and effect as if they were expressly incorporated in its terms."); *Farmers and Merchants Bank of Monroe v. Federal Reserve Bank of Richmond,* 262 U.S. 649, 660 (1923) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms."); Syllabus Point 1, *West Virginia-Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 832, 42 S.E.2d 46, 47 (1947) ("In order for a usage or custom to affect the meaning of a contract in writing because within the contemplation of the parties thereto, it must be shown that the usage or custom was one generally followed at the time and place of the contract's execution."); *Schiro v. W. E. Gould & Co.*, 18 Ill.2d 538, 544, 165 N.E.2d 286, 290 (1960) ("It is settled law that all contracts for the purchase and sale of realty are presumed to have been executed in the light of existing law, and with reference to the applicable legal principles. Thus, the law existing at the time and place of the making of the contract is deemed a part of the contract, as though expressly referred to or incorporated in it."); *Beehive Medical Electronics, Inc. v. Industrial Com'n*, 583 P.2d 53, 60 (Utah,1978) ("It has always been recognized that a contract contains,

(continued . . .)

7

petitioners rely upon a 1902 case, *Williams v. South Penn Oil Co.*, 52 W.Va. 181, 43 S.E. 214 (1902), where we said in Syllabus Point 1 that the word "surface" has a definite and certain meaning:

> The word "surface" when specifically used as a subject of conveyance has a definite and certain meaning, and means only that portion of the land which is or may be used for agricultural purposes.

The petitioners take the position that, in 1907, the phrase "the surface only" had a definite and certain meaning to Florence and Walter Forman, and that the circuit court erred in finding otherwise.

Respondent Morgan conversely argues that the circuit court was correct in finding that the 1907 deed was ambiguous. Mr. Morgan points out that in 1923 this

---

implicitly, the laws existing at the time it is completed."); *Keeling v. City of Grand Junction*, 689 P.2d 679, 680 (Colo.App.,1984) ("The existing law at the time and place of the making of the contract, including the city charter, becomes a part of the contract."); *Cogar v. Sommerville*, 180 W.Va. 714, 719, 379 S.E.2d 764, 769 (1989) ("a severance deed is to be construed in light of the conditions and reasonable expectations of the parties at the time it is made. As a consequence, mining methods not contemplated at the time of the severance deed may not be utilized."). *See also* 11 Richard A. Lord, *Williston on Contracts* § 30:19, at 203–04 (4th ed. 1999) ("[T]he incorporation of applicable existing law into a contract does not require a deliberate expression by the parties. Except where a contrary intention is evident, the parties to a contract . . . are presumed or deemed to have contracted with reference to existing principles of law."). "The rationale for this rule is that the parties to the contract would have expressed that which the law implies had they not supposed that it was unnecessary to speak of it because the law provided for it. Consequently, the courts, in construing the existing law as part of the express contract, are not reading into the contract provisions different from those expressed and intended by the parties, as defendants contend, but are merely construing the contract in accordance with the intent of the parties." *Schiro v. W. E. Gould & Co.*, 18 Ill.2d at 544, 165 N.E.2d at 290 (citations omitted).

However, we believe that the case should be resolved on other grounds.

Court explicitly overruled Syllabus Point 1 of *Williams* in *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923),[12] and set forth a new Syllabus Point stating that the word "surface" in a deed is always ambiguous and open to interpretation:

> The term "surface" when used as the subject of a conveyance is not a definite one capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it; and in determining its meaning regard may be had, not only to the language of the deed in which it occurs, but also to the situation of the parties, the business in which they were engaged, and to the substance of the transaction.[13]

Mr. Morgan contends the circuit court properly found the phrase "the surface only" to be indefinite and susceptible of modern-day interpretation.

The legal question at the heart of this case is simple: is every deed of the "surface" presumed to be ambiguous and open to interpretation using extrinsic evidence to contradict, alter or add to the deed's language? Or does the term "surface" have some definite, certain meaning that the average person can rely upon? The circuit court directly relied upon *Ramage*, and found Florence Forman's 1907 deed of "the surface only" was ambiguous. Based upon the arguments of the parties, the overarching question is this: Is *Ramage* a correct statement of the law?

---

[12] *See* Syllabus Point 2, *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923) ("Point one of the syllabus in *Williams v. South Penn Oil Company*, 52 W.Va. 181, is overruled.").

[13] Syllabus Point 1, *Ramage*, *supra*.

9

Courts nationwide have pronounced two, competing interpretations of the word "surface" – and West Virginia has followed both:

> There seem to be two general methods of interpreting the word "surface" in the cases. One approach is to give it a clear and unambiguous meaning; the other is to treat it as ambiguous and allow the use of extrinsic material for interpretation.[14]

In a 1961 article, a commentator labeled these two interpretations as "the *Williams* and the *Ramage* views, respectively. The labels come from the cases in which they are most clearly pronounced. *Williams v. South Penn Oil Co.*, 52 W.Va. 181, 43 S.E. 214 (1902), and *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923)."[15]

The common law rule – *cujus est solum ejus est usque ad coelum et ad inferos* [16] – is that a land owner with a fee simple title owns everything over the land and under it to the center of the earth. This rule extends to the minerals, be they solid (like coal), fluid or fugacious minerals (like oil and gas).

---

[14] Myles E. Flint, *Meaning of Conveyances of the "Surface" Only*, 34 Rocky Mtn.L.Rev. 330 (1961).

[15] *Id.*, 34 Rocky Mtn.L.Rev. at 330 n. 1.

[16] "To whomever the soil belongs owns also to the sky and to the depths." *See Drummond v. White Oak Fuel Co.*, 104 W.Va. 368, 375, 140 S.E. 57, 59 (1927). *See also* Michelle Andrea Wenzel, *The Model Surface Use and Mineral Development Accommodation Act: Easy Easements for Mining Interests*, 42 Am.U.L.Rev. 607, 613-14 (1993) ("the maxim . . . dominated medieval English thinking about property ownership, and under this absolutist theory, any subterranean minerals belonged solely to the surface owner."); Harold H. Healy, 1 Rocky Mtn. Min. L. Inst. 4 (1955).

The owner of a fee simple title may sever the land into separate surface and mineral estates in a number of ways. The owner may convey to another ownership in a particular mineral underlying the tract (such as all of the coal, oil, gas, uranium, silver, or limestone),[17] a seam of one mineral,[18] or all of the minerals, while retaining the surface of the tract. Or, the owner may convey the surface only; a "conveyance of the 'surface only' in effect reserves all the remaining minerals" to the grantor.[19] The separate estates that are created may later be conveyed, devised, and/or taxed.[20]

---

[17] "Mineral will, therefore, *prima facie* include not merely such articles as coal and ironstone and freestone, but fire clay and china clay or porcelain clay, and also every kind of stone, flint, marble, slate, brick earth, chalk, gravel, and sand: provided only that these articles are under the surface, and do not lie loosely upon it." *Sult v. A. Hochstetter Oil Co.*, 63 W.Va. 317, 323-24, 61 S.E. 307, 310 (1908).

[18] *See*, *e.g.*, *Bogart v. Amanda Consolidated Gold Mining Co.*, 74 P. 882 (Colo. 1903) (where the grantor conveyed all of the surface and minerals except for one mineral seam: "saving, excluding and excepting from said deed . . . the Bogart vein, lode, ledge or deposit wherever the same may be found to cross or pass through the conflicting surface."); *Lippeatt v. Comet Coal and Clay Co., Inc.*, 419 N.E.2d 1332 (Ind.App. 1981) (discussing ownership of the "sixth (6th) or surface vein of coal").

[19] Carlos B. Masterson, *Adverse Possession and the Severed Mineral Estate*, 25 Tex.L.Rev. 139, 141 (1946).

[20] *See*, *e.g.*, *Adkins v. United Fuel Gas Co.*, 134 W.Va. 719, 723, 61 S.E.2d 633, 636 (1950) ("Although oil and gas are fugaceous and vagrant in character, an estate therein may be severed from the surface."); Syllabus Point 8, *Plant v. Humphries*, 66 W.Va. 88, 66 S.E. 94, 94 (1909) ("The possession of the surface land does not carry with it possession of the coal under that surface where the estate in the coal has been severed as to title."); *Porter v. Mack Mfg. Co.*, 65 W.Va. 636, 637, 64 S.E. 853, 853 (1909) (Grantor "granted the surface . . . except that they did not grant, but retained, the minerals. In other words, they made two estates out of the land, two properties, one of the surface or body of the land, the other the minerals[.]"); *Harvey Coal & Coke Co. v. Dillon*, 59 W.Va. 605, 634, 53 S.E. 928, 941 (1905) ("There can be several estates or interests, each property, in a tract of land, especially can there be a chattel real savoring

(continued . . .)

11

When the fee severance is completed, separate and distinct estates are created, each being a fee simple estate in land, having all the incidents and attributes of such an estate. . . . Each estate may be conveyed and dealt with as any other fee simple, and estates therein of less quality may be created, such as estates for years, estates for life, and determinable fee estates[.][21]

There are a significant number of surface deeds in West Virginia.[22] This Court has "often been asked to address disputes between surface owners and mineral owners[.]"[23] It is sometimes unclear if a particular mineral – for instance, clay near the

---

of it, issuing out of it. Several persons may have in one tract of land distinct interests which are the subject of taxation, such as land and mineral rights, or land and growing trees, or land and structures thereon."); Syllabus Point 1, *Wallace v. Elm Grove Coal Co.*, 58 W.Va. 449, 52 S.E. 485 (1905) ("A conveyance of the underlying coal, with the privilege of its removal from under the land of the grantor affects [sic] a severance of the right to the surface from the right to the underlying coal and makes them distinct corporeal hereditaments. The presumption that the party having the possession of the surface has the possession of the subsoil also, does not exist when these rights are severed.")

[21] Masterson, *supra* note 19, 25 Tex.L.Rev. at 142.

[22] We have not found a specific accounting of the number of surface deeds in West Virginia. We suspect the number to be significant, because one law review article noted,
> In South Dakota, approximately 8.5 million acres of land . . . have the minerals severed (i.e. private ownership with the surface and separate private ownership of the minerals). This constitutes about one-fifth of the state's total land area.

Marvin D. Truhe, *Surface Owner vs. Mineral Owner or "They Can't Do That, Can They?,"* 27 S.D.L.Rev. 376, 381 n. 26 (1982). Anecdotally, oil magnate J. Paul Getty was once quoted as saying, "The meek shall inherit the earth – but NOT the mineral rights." *See also*, *Milwaukee Journal*, p. 1 (June 19, 1951) ("Were they willing to sign over all mineral rights in advance, we dare say the meek could inherit the earth right now.")

[23] *Antco, Inc. v. Dodge Fuel Corp.*, 209 W.Va. 644, 648, 550 S.E.2d 622, 626 (2001). *See also Akers v. Baldwin*, 736 S.W.2d 294, 297-98 (Ky. 1987) ("The conflicting

(continued . . .)

surface of a tract – is a "mineral" or part of the "surface."[24]   Additionally, mineral

extraction temporarily interferes with use of the surface.  And in some cases, removal of

minerals damages or destroys the surface.[25]   As new minerals are discovered, and as

better techniques for harvesting those minerals become available, legal conflicts between

owners of the surface and of the minerals will abound.[26]

---

rights of the surface owner and the mineral owner have led to a plethora of litigation, not only in Kentucky but throughout the United States.").

[24] *See, e.g.*, *Rock House Fork Land Co. v. Raleigh Brick & Tile Co.*, 83 W.Va. 20, 97 S.E. 684 (1918) (where a deed granted "all the coal and other minerals of every kind and description," the grant included a seam of clay "not a part of the soil . . . used for agricultural purposes" useful for manufacturing bricks).

[25] *See, e.g.*, Syllabus, in part, *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995) ("The right to surface mine will only be implied if . . . it is reasonably necessary for the extraction of the mineral; and that it may be exercised without any substantial burden to the surface owner.").

[26] "[A]dvances in technology portend and may well accelerate the discovery of substances that may be held ultimately to be 'surface' or 'minerals,' depending upon a variety of circumstances."  Don Emery, *What Surface is Mineral and What Mineral is Surface*, 12 Okla.L.Rev. 499, 500 (1959).  For instance, with the recent development of deposits of natural gas in shale, the question of "whether a conveyance or reservation of 'minerals' . . . includes shale and shale gas . . . proves . . . to be a challenging question filled with legal complexities." Mikal C. Watts, Emily C. Jeffcott, *Does He Who Owns the "Minerals" Own the Shale Gas? A Guide to Shale Mineral Classification*, 8 Tex. J. Oil Gas & Energy L. 27, 28 (2012-13).  *See also*, *Williams v. South Penn Oil Co.*, 52 W.Va. at 187, 43 S.E. at 216 ("The mining of coal and other minerals is constantly developing new questions."); *Ball v. Island Creek Coal Co.*, 722 F.Supp. 1370, 1373-74 (W.D.Va.,1989) ("In 1908, as today, the parties knew that 'knowledge [would] increase,' see Daniel 12:4, and that better mining techniques would become available.  An owner of mineral rights should be allowed to take advantage of modern technology subject to the terms of the deed.")

So this case has great significance to the interpretation of many land titles in West Virginia. This Court's goal in the area of land ownership is to avoid bringing "upon the people interminable confusion of land titles[;]" instead, we must "endeavor[] to prevent and eradicate uncertainty of such titles."[27]

We believe that *Ramage* injected uncertainty and confusion into our law of land titles. The decision was soundly criticized by two dissenting members of the Court when the decision was issued. Its reasoning has been thoroughly dissected in three law review articles. *Ramage* has never been applied by this Court, only distinguished or ignored. And the decision has been rejected by other jurisdictions.

As we discuss below, we do not believe that Syllabus Point 1 of *Ramage* is sound law.

A.
*Ramage v. South Penn Oil Company* (1923)

*Ramage*, decided by this Court in 1923, was a 3-2 decision. As noted previously, *Ramage* overruled Syllabus Point 1 of *Williams v. South Penn Oil Co.* which held that the word "surface" in a deed "has a definite and certain meaning, and means only that portion of the land which is or may be used for agricultural purposes."[28] The *Ramage* Court decided that the term "surface" "is not a definite one capable of a

_____

[27] *Toothman v. Courtney*, 62 W.Va. 167, 183, 58 S.E. 915, 921 (1907).

[28] Syllabus Point 1, *Williams v. South Penn Oil Co.*, *supra*, overruled by Syllabus Point 2, *Ramage v. South Penn Oil Co.*, *supra*.

14

definition of universal application"[29] and must be analyzed on a case-by-case consideration of parol and other extrinsic evidence surrounding the transaction.

*Ramage* concerned ownership of the coal under 110 acres of land in Monongalia County. In 1889, Culver G. Thyng and his company, C.G. Thyng & Co. ("Thyng") – interested in the oil business in Monongalia County – bought the entire 110 acres in fee. Five days later, in the "Lemley deed," Thyng deeded to Lewis and David Lemley "all that surface" of the 110 acre tract. Thyng reserved the right to ingress and egress for drilling gas and oil wells, and to use the tract for drilling and transporting gas and oil.[30] Thyng subsequently conveyed these rights to South Penn Oil Company.

Plaintiff Blake Lemley Ramage was a successor to the Lemley deed and claimed she owned all of the coal. To prove her right, she introduced parol evidence indicating Thyng and South Penn Oil acted like they owned only the oil and gas. For instance, Thyng granted by deed to South Penn Oil 3/8 of "the petroleum oil and gas in and under" the 110 acre tract. At other times, Thyng mortgaged, deeded or leased to other individuals rights to oil and gas under the tract, and later deeded its remaining rights to any "minerals, oil and gas" to South Penn Oil. When Thyng or South Penn Oil drilled for oil and gas, the wells would have been drilled through the seam of coal. It was not until 1920 that Thyng gave South Penn Oil a deed of "all the veins and seams of coal"

---

[29] Syllabus Point 1, *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923).

[30] 94 W.Va. at 83, 118 S.E. at 163.

under the tract, after Ramage brought her suit. Based on this evidence, Ramage claimed that Thyng and South Penn Oil interpreted the 1889 Lemley deed as only reserving oil and gas and not reserving any coal.

According to Ramage, other evidence showed that her predecessors actions were consistent with ownership of the coal. For instance, in 1901, Lewis Lemley granted David Lemley all rights to the coal under the 110 acres. David Lemley conveyed the coal to George Core, and it later passed to Ramage. The coal was entered on the land books with the surface and assessed to the Lemleys until 1914. Then, Thyng had the coal entered on the land books by the assessor for taxation.[31]

Furthermore, Ramage argued there was little coal development in the region in 1889, only oil and gas development. Hence, she claimed that Thyng could not have intended to reserve for itself rights to the coal, because in 1889 it did not know coal existed beneath the land.

Ramage asserted that *Williams* "does not correctly state the law" and argued *Williams* ought to be overruled.[32] Accordingly, the *Ramage* majority scrutinized *Williams*.

The *Ramage* majority first examined four cases relied upon by the *Williams* Court and found those cases did not clearly define the term "surface." The *Ramage* majority essentially found that the *Williams* opinion had no precedential support.[33]

---

[31] 94 W.Va. at 84-87, 118 S.E. at 163-165.

[32] 94 W.Va. at 88, 118 S.E. at 165.

16

The *Ramage* majority further claimed that if the term "surface" means only that part of the land which "may be used for agricultural purposes," then "the grantees acquired but a mere shell . . . confined to the depth of the plough-share."[34]  Applying this straw man interpretation of *Williams*, the *Ramage* Court found a grantee of the surface "could not build the foundation for a permanent house, dig a cellar, or water-well, or post-holes for a permanent fence, remove embedded stone or gravel, or grub a tree whose roots were deeper than the plough-share would go, without committing a trespass."[35]  The Court then looked to the dictionary definition of "surface," which was "the outside or exterior part," and found it absurd to believe that the Lemley deed conveyed "nothing but the 'outside or exterior part' of the land" because it "would not give them one inch of soil."[36]

The *Ramage* Court concluded that "where the term 'surface' is . . . used in a conveyance such severance is in the minds of the parties."[37]  The Court conceded that if the word "surface" is used in a conveyance without any qualifying words, then "the word 'surface' would carry all the solum, or soil, except the minerals."[38]  However, the Court

---

[33] 94 W.Va. at 88-95, 118 S.E. at 165-167.

[34] 94 W.Va. at 91, 118 S.E. at 166.

[35] *Id*.

[36] 94 W.Va. at 97-98, 118 S.E. at 169.

[37] 94 W.Va. at 98, 118 S.E. at 169.

[38] 94 W.Va. at 98-99, 118 S.E. at 169.

believed that the word "surface" had no well-defined legal meaning and was ambiguous.[39] Its meaning would always be controlled "by the nature of the transaction and by the circumstances and surroundings under which it is made."[40]

The *Ramage* Court assessed the parol and other extrinsic evidence and thought parties to the Lemley deed "were doubtless thinking of two things: The land without the oil and gas and operating rights, as one part, and the oil and gas and operating rights, as the other part."[41] In sum, the Court believed that the 1889 conveyance of the "surface" to the Lemleys also conveyed to them all the coal and other mineral rights *except* the oil and gas.[42]

B.
*The* Ramage *dissent*

Two of the five members of the *Ramage* Court forcefully dissented in a lengthy separate opinion. First, they criticized the trial court and majority opinion's view that the "plain and ordinary meaning" of surface "as defined by lexicographers and others" should be ignored in favor of an ever-shifting reference to the "local meaning of the term 'surface.'"[43] The dissenters said, "Such a view of the law would, it seems to me,

---

[39] 94 W.Va. at 101, 118 S.E. at 170.

[40] *Id.*

[41] 94 W.Va. at 98, 118 S.E. at 169.

[42] 94 W.Va. at 104-05, 118 S.E. at 170.

[43] 94 W.Va. at 110, 118 S.E. at 173 (Miller, J., dissenting).

be building property rights upon foundations of sand, which ought not to be regarded with favor by the courts."[44]

Second, the dissenting justices found our law clear that "courts will not, by construction, enlarge the estate conveyed by a deed[.]"[45] Yet the majority violated this principle: even though the Lemley deed conveyed only the surface, the majority opinion decided that the surface estate should be enlarged to include the coal and all other minerals not within the knowledge of the parties to the 1889 deed.[46]

Finally, the dissenting justices thought the rule of property defining "surface" that was laid down in *Williams v. South Penn Oil Co.* was correct, and should not have been disturbed by the majority.[47]

C.
*Law Review Criticism*

Shortly after *Ramage* was issued, an article in the *West Virginia Law Quarterly* attacked the decision. The article found the opinion

> . . . advanced the somewhat astounding and hitherto unprecedented doctrine that the word "surface" when used as the subject of conveyance is not a word having a fixed and definite meaning and that resort might be had to the

---

[44] *Id.*

[45] Syllabus Point 3, *King v. Smith*, 88 W.Va. 312, 106 S.E. 704 (1921).

[46] *Ramage*, 94 W.Va. at 113, 118 S.E. at 174-75 (Miller, J., dissenting).

[47] 94 W.Va. at 115-16, 118 S.E. at 176 (Miller, J., dissenting).

interpretation placed on the clause by the parties to ascertain whether the coal had passed.[48]

The article said *Ramage* "is founded upon a fallacious minor premise . . . on the single proposition that the word 'surface' when used as the subject of a conveyance may be rendered . . . so broad and comprehensive as to include minerals."[49]

The author goes on to note that *Ramage* "marks a salient departure from the rule of *stare decisis*," and that it is even more "regrettable that the rule should be so clearly violated in the field of real property[.]"[50]  The author's reason is blunt:

> The case in question overrules previously adjudicated West Virginia cases and is **contrary**, not only to the weight and preponderance, but so far as the writer has been able to determine, **to all the American and English authority on the point.**[51]

To support this proposition, the author refers to cases from other courts giving various clear, unambiguous definitions for the word surface:

> The word "surface" has been variously defined, as the mere *vestimentae terrae*, the top of the earth and whatsoever is on the face thereof; as not the mere plane surface, but all the land except the mines; as the non-mineral portion of the land which covers and envelops the minerals; and as that

---

[48] William Bruce Hoff, *Note: Real Property – Conveyance of Surface Construed*, 30 W.Va.L.Q. 50, 51 (1924).

[49] 30 W.Va.L.Q. at 51.

[50] 30 W.Va.L.Q. at 52.

[51] *Id* (emphasis added).  We discuss this American and English authority later in this opinion.

20

portion of the land which is or may be used for agricultural purposes.[52]

This article's assessment is supported by two law review analyses performed nearly four decades later. In a 1961 discussion of cases weighing the meaning of the term "surface,"[53] the author criticized the *Ramage* decision because it was based, in part, on the fact that the grantor (Thyng & Co.) had not made any move to extract the coal after the 1889 deed, even though it should have known coal was present because drilling performed after 1889 passed through the coal seam to reach the oil and gas. The author found "[t]here is room for criticism of [this] approach put forward in the *Ramage* case."[54]

> The fact that the grantor had not taken any definite steps towards using this coal might indicate any number of things, only one of which is intent to convey. Perhaps, at the time it was found, he was without resources to mine the coal; or perhaps there had been no opportunity to develop it; or possibly it was not feasible to develop it at the time of discovery.[55]

The author found that the *Ramage* Court had injected uncertainty and confusion into the law of deeds when it held that the word "surface" had no clear and definite meaning. The author suggested that courts should follow an alternative route: "If some definite meaning were accepted, drafting of instruments would be made more

---

[52] *Id* (footnotes omitted).

[53] Flint, *supra* at note 14, 34 Rocky Mtn. L. Rev. at 335.

[54] *Id*.

[55] *Id.*, 34 Rocky Mtn. L. Rev. at 336.

simple and there would be less confusion in an already complex field. It is submitted that . . . the *Williams* view is the better approach to the problem."[56]

Likewise, another 1961 law review article criticized the rationale of the *Ramage* Court as flawed, and suggested that courts should instead "giv[e] the terms of the instrument, particularly the term 'surface,' their ordinary and popular meaning."[57] Because *Ramage* essentially says that a grant of the "surface" should be interpreted as containing an *implied* reservation of subsurface minerals, it created a result different from instances where the minerals were *expressly* reserved. "The legal effect of granting surface and expressly reserving minerals should be no different from the legal effect of granting surface and impliedly reserving minerals. Uniformity could be achieved by giving the term 'surface' its ordinary meaning."[58]

D.
*This Court has ignored* Ramage

---

[56] *Id.*, 34 Rocky Mtn. L. Rev. at 335.

[57] Herbert J. Friedman, *Mines and Minerals: Construction of Deeds: Whether Conveyance of Surface with Reservation of Minerals Conveys Subsurface Water*, 49 Cal.L.Rev. 763, 765 (1961). This article is specifically focused on *Fleming Foundation v. Texaco, Inc.*, 337 S.W.2d 846 (Tex.Civ.App. 1960), where a landowner conveyed the "surface only" to another but reserved all the oil, gas, "and other minerals." The owner of the surface then allowed an oil company to extract groundwater, and the mineral owner sued. The Texas court concluded that subsurface water was not a mineral; because the surface owner could use the water to irrigate crops, it could also sell rights to the water to another.

[58] *Id.*

In a review of our case law, we have found three instances where this Court was asked to directly interpret a deed involving the term "surface." In each of those three cases, this Court failed to follow or apply Syllabus Point 1 of *Ramage*. In two cases, *Ramage* was distinguished; in the third and most recent, it was outright ignored.

First, in *Drummond v. White Oak Fuel Co.*,[59] the Court construed a deed that conveyed "all the surface land and only the surface." We found that the situation in *Ramage* "does not arise here," and that it was "unnecessary for this Court to now enter into the conflict waged around those decisions."[60] We concluded that the deed was clear and unambiguous, and not subject to interpretation. We further held, in Syllabus Point 1, that "surface" does have a clear meaning: "The word 'surface,' when used without any qualifying phrase in a deed, ordinarily signifies only the superficial part of land."[61]

Next, in *Copenhaver v. United Fuel Gas Co.*,[62] the Court considered a deed to the grantee of a one-fourth undivided share of "the surface in a tract," but which reserved in the grantor "all the coal in this tract of land." The grantee argued – as in *Ramage* – that the deed of the "surface" vested in the grantee title to all of the minerals except the coal. However, the *Copenhaver* Court cursorily found that *Ramage* "is

---

[59] *Drummond v. White Oak Fuel Co.*, 104 W.Va. 368, 140 S.E. 57 (1927).

[60] 104 W.Va. at 372, 140 S.E. at 58-59.

[61] Syllabus Point 1, *Drummond v. White Oak Fuel Co.*, *supra*.

[62] *Copenhaver v. United Fuel Gas Co.*, 110 W.Va. 69, 156 S.E. 884 (1931).

23

distinguished,"[63] because three years after making the deed, the parties entered into a partition deed that again said the grantee was only entitled to the surface.

Finally, in *Tate v. United Fuel Gas Co.*,[64] the grantor conveyed to the grantee the right to extract "the oil, gas and brine and all minerals, except coal, underlying the surface of the land." The grantor reserved to himself the surface, including the "clay, sand, stone or surface minerals." When the grantee gas company began drilling wells to inject gas produced elsewhere into rock strata underground, the grantor brought suit claiming the gas company had no right to damage the surface to use the subsurface to store gas. In considering the grantor's rights as owner of the "surface," the Court made no mention of *Ramage* – rather, the Court approvingly cited to *Williams.* The Court said that to assess the word "surface," "we advert to the holdings of this court in the cases of *Williams v. South Penn Oil Company* . . . and *Drummond v. White Oak Fuel Co. . . .*"[65] The Court quoted from Syllabus Point 1 of *Drummond* that, "[t]he word 'surface' . . . ordinarily signifies only the superficial part of land."

E.
*Other courts have rejected* Ramage

---

[63] Syllabus Point 2, *Copenhaver*, *supra*.

[64] *Tate v. United Fuel Gas Co.*, 137 W.Va. 272, 71 S.E.2d 65 (1952).

[65] 137 W.Va. at 282-283, 71 S.E.2d at 72.

This Court is not alone in side-stepping *Ramage*. At least two other courts have had an opportunity to adopt *Ramage*, but have instead explicitly rejected the Court's reasoning.

In *Shell Oil v. Manley Oil Corp.*,[66] a federal court considered whether a deed of "the surface only" with a reservation of coal under the tract in the grantor conveyed the oil and gas rights to the grantee. On appeal, the grantee "relied heavily upon the case of *Ramage*."[67] The court, however, reviewed our cases and decided that the "state of the law in West Virginia is not as clear as it might be." The federal court went on to find *Ramage* confined to a narrow ground and rejected *Ramage*. Instead, the court adopted the reasoning of a case from Ohio[68] to conclude that the grantees had no interest in the oil and gas, and only owned the surface.

In 1985, the Supreme Court of Idaho had an opportunity to consider adopting the reasoning in *Ramage* in *Stucki v. Parker*.[69] The Idaho court examined a 1919 deed from a phosphate company to the grantees of "all of the surface rights in and to and upon" a tract, while reserving to the phosphate company "all the phosphate and phosphate rock . . . [t]ogether with . . . the reversion . . . and remainder . . . thereof." The

---

[66] *Shell Oil Co. v. Manley Oil Corp.*, 124 F.2d 714 (7th Cir. 1942).

[67] 124 F.2d at 716. The federal district court, which was reversed in *Shell Oil*, had also relied heavily upon *Ramage*. *See Shell Oil Co. v. Manley Oil Corp.*, 37 F.Supp. 289 (E.D. Ill. 1941).

[68] *Jividen v. New Pittsburg Coal Co.*, 187 N.E. 124, 125 (Ohio App. 1933).

[69] *Stucki v. Parker*, 703 P.2d 693 (Idaho 1985).

25

grantees asserted they acquired all mineral rights (except the phosphates) by the surface rights deed, and relied on *Ramage*.

The Idaho court summarized *Ramage* this way:

> [*Ramage* holds] that a conveyance of the surface with a specific reservation of one or more enumerated minerals transferred the subsurface rights with the surface and only the specifically reserved minerals were retained by the grantor. [70]

The Idaho court then explicitly rejected *Ramage* as unsound and having failed to withstand the test of time:

> The construction given a surface conveyance with specific reservations by the *Ramage* court does not appear to have withstood the test of time. Recent courts addressing the same issue have concluded that a grant of the surface with specific reservations results in a transfer of the surface only. . . . We are not persuaded that the holding in *Ramage*, *supra*, was sound law. [71]

### F.
### Ramage *must be overruled*

As should now be obvious, Syllabus Point 1 of *Ramage* is not sound law because it violates two fundamental public policies. First, in drafting deeds or other instruments of conveyance, courts and practitioners want terms with definite meanings. "The quest for uniformity and certainty is a major concern for the practitioner."[72] By

---

[70] 703 P.2d at 695.

[71] *Id.*

[72] Flint, *supra* at note 14, 34 Rocky Mtn. L. Rev. at 335.

assuming that the term "surface" has no concrete meaning, *Ramage* has made the drafting of deeds, wills and other instruments of conveyance much more complex.

Second, courts want to reach a result which the parties intended, and therefore attempt to confine themselves to the four corners of the document to divine the parties' intent. *Ramage* violates this fundamental policy by requiring a court to turn back the clock and go beyond the document to discern the parties' intent from parol and other extrinsic evidence. As *Ramage* instructs, a court is to go beyond a deed in interpreting the word "surface" to consider "not only the language of the deed in which it occurs, but also . . . the situation of the parties, the business in which they were engaged, and . . . the substance of the transaction."[73] *Ramage* also counsels a court to consider the "subject matter of the deed, the purpose sought to be accomplished thereby, and the acts of the parties thereunder."[74]

*Ramage* fails to account for the all-too-common situation that after the surface and minerals are severed,

> there is often a great time lag between the time of the grant and the time of the controversy. As the time lapse increases, attempts to determine the intent of the parties [at the time of the conveyance] becomes more difficult. Even the parties themselves could become confused as to the intent of a grant which had been made twenty-five or thirty years earlier.[75]

---

[73] Syllabus Point 1, *Ramage*, *supra*.

[74] Syllabus Point 3, *Ramage*, *supra*.

[75] Flint, *supra* at note 14, 34 Rocky Mtn. L. Rev. at 336.

One commentator summarized the historical problem in this way:

> In the eastern states, mineral interests were often severed from surface interests during the Nineteenth Century. Thus, many of these interests are now more than 100 years old. . . . Despite considerable changes in surface use since these severances occurred, the minerals frequently remain unmined.
>
> There are many reasons why the minerals may not have been mined. Some minerals go unmined as a result of the division of ownership which seems inevitable when property interests pass from generation to generation. Others go unmined when their corporate owners quietly go out of business without formal dissolution or bankruptcy proceedings. In still other cases, the minerals are being held as reserves, either against present commitments for future production or strictly as inventory for production or sale when market conditions warrant it. Finally, some mineral deposits cannot be economically developed under present market conditions or with current technology, but may be developed with changed conditions. Often non-production of a particular mineral property is due to a combination of these reasons. . . .
>
> A typical scenario goes as follows. The severance of the two estates occurred decades ago. Memories of that transfer have dimmed. Title searchers concerned with the surface estate title fail to look for severances. Instead, they limit their abstracts, opinions, and insurance policies to title to the surface estate alone. When the mineral interest becomes valuable enough to merit development, new operators approach the surface owner for leases or deeds. At that time, the surface owner tries to establish title to the minerals despite the ancient severance.[76]

---

[76] Cyril A. Fox, Jr., *Private Mining Law in the 1980's: The Last Ten Years and Beyond*, 92 W.Va.L.Rev. 795, 819-20 (1990).

Unquestionably, uniformity and predictability are important in the formulation and application of our rules of property. Under the doctrine of *stare decisis*, "[a] rule of property long acquiesced in should not be overthrown except for compelling reasons of public policy or the imperative demands of justice."[77]

> Stare decisis is not a rule of law but is a matter of judicial policy. It is policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation. However, stare decisis is not an inflexible policy. In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted.[78]

"Much has been written and many clichés have been formulated to demonstrate why, in a certain case, stare decisis should not apply. We think it is sufficient to say that a rule of principle of law should not be adhered to if the only reason therefor is that it has been sanctified by age."[79] "It has been well said that 'it is better to be right than to be consistent with the errors of a hundred years.'"[80] Put another way, "No legal principle is ever settled until it is settled right."[81]

---

[77] *Smith v. Glen Alden Coal Co.*, 32 A.2d 227, 233-234 (Pa. 1943).

[78] *Adkins v. St. Francis Hospital*, 149 W.Va. 705, 718, 143 S.E.2d 154, 162 (1965).

[79] *Id.*

[80] *Lovings v. Norfolk & W. Ry. Co.*, 47 W.Va. 582, 590, 35 S.E. 962, 965 (1900).

[81] *Town of Weston v. Ralston*, 48 W.Va. 170, 180, 36 S.E. 446, 450 (1900) (Brannon, J., concurring).

29

Syllabus Point 1 of *Ramage* has not been acquiesced in, either by this Court or others. *Ramage*, which deviated from certainty and uniformity in our property law when it was decided in 1923, is outmoded and is unjust. Accordingly, we now overrule Syllabus Point 1 of *Ramage*.

G.
*Meaning of "Surface" in a conveyance*

The question remains, what is the "surface?" *American Jurisprudence* broadly says that "modern authority holds that use of the word 'surface' means just that, as to hold otherwise would controvert the grantor's intent[.]"[82] It also suggests the following definition: "the soil overlying the minerals, together with such ancillary use of a portion under the surface for drainage, domestic water, foundations, and other uses as will render the surface suitable and usable for the purposes intended."[83] *Black's Law Dictionary* says it is "the top layer of something, esp. of land," or the "part of the geologic section laying over the minerals in question."[84]

The cases suggesting definitions for the term "surface" "differ vastly as to facts" and often cannot be reconciled.[85] But with the perspective of the last century and a

---

[82] 53A Am.Jur.2d *Mines and Minerals* § 183 [2006].

[83] *Id.*

[84] *Black's Law Dictionary* 1580 (9th Ed. 2004).

[85] Don Emery, *What Surface is Mineral and What Mineral is Surface*, 12 Okla.L.Rev. at 501. A compilation of cases, published in 1924, lists most of the cases

(continued . . .)

half, we discern that a stable definition has evolved to give the word "surface" certainty in our law. As we set forth below, even our Legislature presumes a common, layman's definition of the surface, so much so that the word is repeatedly used in statutes without definition.

In the mid to late 1800s, during the Industrial Revolution, land began to be severed into surface estates and mineral estates.[86] As friction developed between the owners of these two estates, and as courts (primarily in England) were asked to resolve disputes, a definition for the term "surface" began to develop. This definition reflected the times, and courts most often found surface land was used for one purpose: agriculture. Hence, the word "surface" took on definitions equivalent to the soil, or the earth used for agrarian pursuits.[87]

---

that have attempted to define "surface." Annotation, *Meaning of Term "Surface" As Employed in Conveyance or Devise*, 31 A.L.R. 1530 (1924).

[86] Under the ancient English common law, "[t]he commoners had no right to the soil, they had only a right to take the herbage by the mouths of their cattle. [Only t]he lord has an undoubted right to open mines." *Wakefield v. Duke of Buccleuch*, L.R. 4 Eq. 613, 633 (1867).

[87] *Wakefield v. Duke of Buccleuch*, L.R. 4 Eq. 613, 625 (1867) ("I think the word 'soil' . . . is used as equivalent to 'surface'"); *Midland Railway Co. v. Checkley*, L.R. 4 Eq. 19, 25 (1867) ("in fact everything except the mere surface, which is used for agricultural purposes" is "clearly a mineral"); *Murray v. Allard*, 43 S.W. 355, 356 (1897) ("'Surface' means that part of the land which is capable of being used for agricultural purposes."). *See also Burgner v. Humphrey*, 41 Ohio St. 340, 352-353 (1884) ("The owner [of the surface] has a natural right to the use of his land, in the situation in which it was placed by nature," while the owner of minerals has an "obligation to protect the superincumbent soil"); Syllabus Point 1, *Cole v. Signal Knob Coal Co.*, 95 W.Va. 702, 122 S.E. 268 (1924) ("The right of the owner of surface of land to subjacent support includes the right to use the soil for the agricultural pursuit to which it may be adapted.").

31

By the late 1800s and early 1900s, other courts began to conclude that the term "surface" connoted all non-mineral soil above a mine.[88] In this time, minerals were

---

[88] *Yandes v. Wright*, 66 Ind. 319 (1879) ("the word 'surface,' as used in the books, means not merely the geometrical superficies without thickness, but includes whatever earth, soil or land lies above and superincumbent on the mine."); *Poutney v. Clayton*, 11 Q.B.D. 820, 839-40 (1883) ("too much stress cannot be laid upon what has been pointed out . . . that the surface means not the mere plane surface but all the land except the mines."); *Keweenaw Ass'n, Ltd. v. Friedrichs*, 70 N.W. 896, 897 (Mich. 1897) ("If the term 'surface rights' has a definite meaning . . . it must be a right to a fee in the lands, subject to a reservation of the minerals in the grantor."); *Bogart v. Amanda Consol. Gold Min. Co.*, 74 P. 882 (Colo. 1903) (Interpreting a deed conveying to grantee the "surface ground," but reserving "the Bogart vein, lode, ledge or deposit wherever the same may be found to cross or pass through the conflicting surface," was found to have conveyed to the grantee all minerals below the surface except the Bogart vein); *Big Six Development Co. v. Mitchell*, 138 F. 279, 290 (8th Cir. 1905) ("The word 'surface' as used in the books, means not simply the geometrical superficies, without thickness, but includes whatever earth, soil, or land lies above and superincumbent on the mine."); *Kansas Natural Gas Co. v. Board of Com'rs of Neosho County*, 89 P. 750, 751 (Kan. 1907) ("In common speech the nonmineral portion of land, the portion which covers and envelops the minerals, is called 'the surface[.]'"); *Dolan v. Dolan*, 70 W.Va. 76, 73 S.E. 90, 91 (1911) ("I would say that a conveyance of surface of land, without more, means all the solum or land except minerals."); *Marquette Cement Min. Co. v. Oglesby Coal Co.*, 253 F. 107, 111-112 (N.D.Ill. 1918) ("The word 'surface' in mining controversies means that part of the earth or geologic section lying over the minerals in question, unless the contract or conveyance otherwise defines it. It is not merely the top of the glacial drift, soil, or the agricultural surface."); *Burrows v. Pittsburgh Coal Co.*, 2 Pa. D. & C. 291, 292 (Ct.Cmn.Pl. 1922) ("The word 'surface,' as used in such a provision in a deed, has uniformly been understood and treated in Pennsylvania as referring to the superincumbent strata, and as embracing everything lying above the coal conveyed. The books are full of cases in which it has been given this meaning[.]); Syllabus Point 1, *Drummond v. White Oak Fuel Co.*, 104 W.Va. 368, 140 S.E. 57 (1927) ("The word 'surface,' when used without any qualifying phrase in a deed, ordinarily signifies only the superficial part of land."); *Clinchfield Coal Corp. v. Compton*, 139 S.E. 308, 312 (Va. 1927) ("'Surface' includes whatever of earth, soil, land, or waters which lies above and is superincumbent upon the coal, and is not limited to the mere geometrical superficies."); Syllabus Point 2, *Jeffrey v. Spruce-Boone Land Co.*, 112 W.Va. 360, 164 S.E. 292 (1932) ("The word 'mineral, in its ordinary and common meaning, is a comprehensive term, including every description of stone and rock deposit, whether containing metallic or

(continued . . .)

largely extracted from land through underground mines.  Hence, this definition failed to account for wells drilled for oil[89] or gas,[90] or for techniques like strip mining, but would include a mine in a stratum above another mine.[91]

This Court was, in 1902, behind the times when it first directly confronted the use of the word "surface" in a deed.  As we noted earlier, in Syllabus Point 1 of *Williams v. South Penn Oil*, we equated the term "surface" to that part of the earth used for agrarian pursuits:

> The word "surface," when specifically used as a
> subject of conveyance, has a definite and certain meaning,

---

nonmetallic substances, while the word 'surface,' when used without any qualifying phrase in a deed, ordinarily signifies only the superficial part of the land.").

[89] By the beginning of the 20th century, oil production was rapidly expanding.  But 50 years earlier, oil had been called "a peculiar liquid not necessary nor indeed suitable for the common use of man."  *Hail v. Reed*, 54 Ky. 479 (Ky. 1854).  *Hail v. Reed* "is considered the first case in the United States dealing with the nature of a landowner's interest in oil and gas."  Owen L. Anderson, John S. Dzienkowski, John S. Lowe, Robert J. Peroni, David E. Pierce and Ernest E. Smith, *Hemingway Oil and Gas Law and Taxation* § 1.3 (4th Ed. 2004).

[90] Gas production was also rapidly expanding by the turn of the 20th century.  But as this Court noted, "A gas well in Knox county, Ohio, drilled in 1866, was open for several years, and the gas allowed to escape, before it was put to any use.  During the time of its escape it was set on fire and threw a flame fifteen or twenty feet into the air, and was quite a curiosity in those days."  *Murphy v. Van Voorhis*, 94 W.Va. 475, 479, 119 S.E. 297, 298-99 (1923).

[91] *Marquette Cement Min. Co. v. Oglesby Coal Co.*, 253 F. 107, 112 (N.D.Ill. 1918) (finding that because the owner of the "surface" is entitled to subjacent support, the owner of a limestone mine 100 feet below the surface could enjoin the owner of a coal mine 500 feet below from removing the supporting coal.  "The owner of the higher stratum is entitled to the same rights as the actual surface owner.").

33

and means that portion of the land which is or may be used for agricultural purposes.[92]

In the text of *Williams*, we emphasized that, "There can be no question but that the word "surface" has a definite certain meaning; that it is that portion of the land which is or may be used for agricultural purposes, for plowing, grazing, etc., and that a conveyance of the surface of a tract of land as completely severs the surface from the various strata beneath it[.]"[93]

By the 1920s, the highest courts of West Virginia and Virginia recognized that other courts were developing differing definitions of "surface." In both instances, the Courts referred to a few of the cases defining the term "surface," and finding no agreed definition in the case law, declared the term hopelessly ambiguous. In *Ramage*, this Court overruled the clear definition adopted in *Williams* and concluded that the term must, *prima facie*, be ambiguous and subject to interpretation. Likewise, the Virginia Supreme Court struggled to define the term "surface" in an agrarian context, but then suggested that its meaning is subject to interpretation.[94]

---

[92] Syllabus Point 1, *Williams v. South Penn Oil Co.*, 52 W.Va. 181, 43 S.E. 214 (1902), *overruled by* Syllabus Point 2, *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923).

[93] *Williams*, 52 W.Va. at 189, 43 S.E. at 217.

[94] *Stonegap Colliery Co. v. Hamilton*, 89 S.E. 305, 312 (Va. 1916) ("Authorities are cited which say that the word 'surface,' when specifically used as a subject of conveyance, means that portion of the land which is or may be used for agricultural purposes; but its meaning in any particular case must necessarily depend upon the intention of the parties, as gathered from the language of the deed and the purpose of the conveyance; and, according to the authorities, the word 'surface' may mean either the

(continued . . .)

34

Other courts had, however, by the 1930s, universally recognized that the fluctuating, expanding definitions of "surface" did not reflect ambiguity, but rather showed the term being refined and gaining clarity and certainty. For instance, the Supreme Court of Montana noted the older definitions, but also found "surface" could encompass "grazing, agricultural, residential, or townsite purposes."[95] Another court suggested "surface" goes beyond "the actual top of the ground" and "means something more than that portion of the land which is or may be used for agricultural purposes," and should include "all the earth substructure" except the minerals.[96] A federal court of appeals found the "surface" included "all of the right to use the surface for such ordinary uses as may be made thereof, with the right to use as much of the subsurface as may be necessary for the customary and ordinary uses of the surface, just as the owner of the subsurface estate has a correlative right to use the surface in order to develop the subsurface rights."[97]

mere superficial or geometrical surface, the part of the soil used for agricultural purposes, or all of the strata except the minerals.")

[95] *Superior Coal Co. v. Musselshell County*, 41 P.2d 14, 21-22 (Mont. 1935) (examining the phrase "surface ground").

[96] *Gearhart v. McAlester Fuel Co.*, 136 S.W.2d 679, 680 (Ark. 1940) (examining a deed of "the surface only").

[97] *Shell Oil Co. v. Manley Oil Corp.*, 124 F.2d at 716 ("We therefore hold that the deed was not ambiguous and that by the use of the words 'surface only' grantors were using them as the subject of conveyance, and as such they had a definite, certain meaning, that is, the top of the soil for its ordinary and usual uses.")

By this time courts simply accepted that terms like "surface," or "surface only" were "plain and ordinary words used in [a] clear and unmistakable manner."[98] Hence, there would be no question that in a deed of "the surface only," "the surface *only* was conveyed, and all of the remainder of the property was retained by the grantor."[99] Even if the grantor noted an express reservation in the grantor of coal and other minerals, such language "was not necessary, as they had not been conveyed by the instrument which conveyed the surface only."[100]

Since the 1930s, the term "surface" has largely been regarded as a word of clear meaning, unless that meaning is plainly altered by other language in the instrument of conveyance.[101]

---

[98] *Id.*, 124 F.2d at 715.

[99] *Jividen v. New Pittsburg Coal Co.*, 187 N.E. at 125.

[100] *Id*. The *Jividen* Court went on to say that, "even if there had been no evidence of oil or gas development [at the time the deed was drafted], the plaintiff could not prevail, because of the clause in the deed conveying the surface only." 187 N.E. at 126.

[101] *See Hendler v. Lehigh Valley R. Co.*, 58 A. 486, 488 (Pa. 1904) (interpreting a deed of the "surface," saying, "It is not a fair construction of this grant to limit it to such mere superficies of the land as may be required for agricultural purposes, even including in such use the building of houses and barns, digging of wells, etc."); *Stephen Hays Estate, Inc., v. Togliatti*, 38 P.2d 1066, 1070 (Utah 1934) ("A surface right is not confined to the geometrical surface. The owner of the surface . . . may cultivate the surface or erect buildings thereon as suits his fancy. Should the owner of a surface right choose to drain his land to make it fit for agricultural purposes, we can perceive of no good reason why he may not do so[.] . . . Should he desire a basement under his building, doubtless he would have a right to excavate the same. . . . In short, the owner of a surface right may improve and use the surface as he sees fit so long as he does not interfere with the rights of those who own the minerals."); *Shell Oil Co. v. Moore*, 48 N.E.2d 400, 404 (Ill. 1943) ("the conveyance of 'surface,' unless otherwise extended in meaning by the

(continued . . .)

limiting of the quantity or kind of minerals conveyed or reserved, has the effect of passing title to the top surface of the land, together with such ancillary use of a portion under the surface for drainage, domestic water, foundations and other uses as will render it suitable and usable for the purposes intended."); *Fleming Foundation v. Texaco, Inc.*, 337 S.W.2d 846, 851 (Tex.Civ.App. 1960) ("the non-mineral portion of the land, the portion which covers and envelopes the minerals, is called the surface"); *Wilkes-Barre Tp. School Dist. v. Corgan*, 170 A.2d 97, 99 (Pa. 1961) ("The term 'surface,' when used in law, is seldom, if ever, limited to mere geometrical superficies. Where, however, the surface is granted to one and the underlying coal to another, the 'surface' includes whatever earth, soil or land which lie above and is superincumbent upon the coal[.]"); *Mack Oil Co. v. Laurence*, 389 P.2d 955, 960 (Okla. 1964) ("the conveyance of 'surface only' of property . . . the portion of the land which covers and envelops the minerals comprises the 'surface' of the land involved. And, such conveyance vests in the grantee the same rights to use of the land conveyed as are exercised by fee owners, subject only to the right of the grantors to remove the minerals reserved."); *Riedt v. Rock Island Improvement Co.,* 521 P.2d 79, 83 (Okla. 1974) (the inclusion of the term "surface" meant the uppermost crust of the earth); *Blythe v. Hines*, 577 P.2d 1268, 1270 (Okla. 1977) ("in a popular sense and within limits, 'surface' is definite to an extent, in that, standing alone, it has always meant at least that part of the land devoted to agricultural and grazing purposes[.]" In assessing whether a "surface estate" carried with it all rights to sand, gravel, rock and limestone, "The trial court was correct when it considered evidence of the effect of the destruction of, or impairment of the agricultural rights to the surface" in removing these minerals.); *Large v. T. Mayfield, Inc.*, 646 S.W.2d 292 (Tex.App.1983) (the words "surface rights" were intended by the parties to the deed to be an express limitation on the estate granted. "To hold otherwise would be to give no significance to the words used by the parties to the deed."); *Osborne v. Holford*, 575 P.2d 866, 868 (Colo.App. 1978) (a deed of "all of the surface" "operated as a severance, and that plaintiffs have no interest in the subsurface."); *Stucki v. Parker*, 703 P.2d at 695 (Idaho, 1985) ("The correct interpretation of a deed which conveys the surface and then lists specific reservations is this: the reservations relate only to that which was first conveyed, the surface. Without a construction in this manner, the insertion of the word surface becomes meaningless and only the reservation is of any import. When the grantor conveys the surface he means just that—a conveyance of the surface, and to hold otherwise controverts the clear intention of the grantor."); *Phillips v. Fox*, 193 W.Va. 657, 660, 458 S.E.2d 327, 330 (W.Va.,1995) (noting a circuit court order that found that the "surface" conveyed to appellees "includes all of the land from the space overhead to the center of the earth except only for the oil, gas, coal and other similar minerals which can be mined and extracted without destruction of the surface."). *Cf. Heinatz v. Allen*, 217 S.W.2d 994, 997-998 (Tex. 1949) (a will devised "the surface rights exclusive of the mineral rights" to one party, and to another party "the mineral rights;" in resolving whether limestone at or near the surface was a mineral, the court said, "The limestone . . .

(continued . . .)

Further bolstering our finding that the word "surface" has a definite and certain meaning to laymen are statutes in the *West Virginia Code*. The Legislature has adopted, at various times, statutes pertaining to the "surface" and "surface owners." Yet, in our review of the *Code*, West Virginia's statutes make repeated references to "surface" or "surface owners" without offering a specific definition, presuming that the definition is clear and unambiguous.[102] We can find only two instances where the Legislature adopted

is so closely related to the soil, so nearly a part of the very surface, the soil itself, that it is reasonably and ordinarily considered a part of the soil and as belonging to the surface estate rather than as a part of the minerals or mineral rights." Further, "the limestone is recoverable only by quarrying or the open pit method which destroys the surface for agricultural and grazing purposes."); *Yuscavage v. Hamlin*, 137 A.2d 242, 245 (Pa. 1958) (a deed of "all the surface and right of soil" in "land," could not be "limited to the surface crust, the mere superficies, such as might be required for agricultural purposes. We are satisfied that the grantors conveyed their entire right, title and interest in and to the land as the deed in the main indicates."). *See also Osborne v. Holford*, 575 P.2d 866 (Colo.App. 1978) (determining a deed to "all of the surface" gave grantee "good title only to the surface estate, since the surface and sub-surface had been severed[.]"); *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority*, 896 P.2d 503, 515 (Okla. 1994) (examining whether a contract to convey to a grantee all "interest in his house and grounds" permitted grantor to deed only a "surface estate" while reserving all mineral interests in the grantor; court found the term "grounds" to be more expansive than the term "surface," and that the contract was intended to convey all of the land including minerals).

[102] *See*, *e.g.*, *W.Va. Code* § 5B-2A-6(b)(4) [1999] (requiring surface mine coal operators to develop a "community impact statement" which includes the "intentions of the surface and mineral owners" relative to the property acquired for mining operations); *W.Va. Code* § 8-13A-3(a) [1994] ("Commercial property" means the surface of any taxable real property); *W.Va. Code* § 11-4-9 [1935] ("When any person becomes the owner of the surface, and another or others become the owner of the coal, oil, gas, ore, limestone, fireclay, or other minerals or mineral substances in and under the same, or of the timber thereon, the assessor shall assess such respective estates . . . to the respective owners thereof[.]"); *W.Va. Code* § 11-4-17 [1972] ("Any owner of two or more contiguous tracts of . . . the surface of land, or any estate in the coal, oil, gas, ore, limestone, fireclay, or other minerals or mineral substances, in and under the same, or of

(continued . . .)

a definition. The Oil and Gas Production Damage Compensation Act is a statutory

scheme designed to provide a "surface owner" with fair compensation for the loss of use

of surface area during drilling operations. The Legislature gave the following definitions

for a "surface estate" and a "surface owner":

> "Surface estate" means an estate in or ownership of the surface of a particular tract of land overlying the oil or gas leasehold being developed; and

---

the timber thereon, . . . may . . . have the same . . . consolidated with other like tracts" on the county land books for taxation purposes); *W.Va. Code* § 11-13C-3(b) [1987] ("'Surface mine' means the surface of land upon which activities are conducted which disturb the natural surface of the land and result in the production of ores or minerals."); *W.Va. Code* § 19-12A-1a [2007] (Abolishing the farm management commission, and transferring title to "the Weston State Hospital Institutional Farm" to the Department of Health and Human Resources, except that the Department of Agriculture "shall retain all oil, gas and mineral rights, interests and title underlying the surface of the real property[.]"); *W.Va. Code* § 22-3-2 (stating the legislative findings and purpose behind the Surface Coal Mining and Reclamation Act, one of which is to "[a]ssure that the rights of surface and mineral owners . . . are adequately protected" from surface-mining operations); *W.Va. Code* § 22-3-9(a) [1994] (requiring applications for surface-mining permits to contain "the names and addresses of . . . the owner of record of the property, surface and mineral, to be mined . . . [and] the owners of record of all surface and subsurface areas contiguous to any part of the proposed permit area[.]"); *W.Va. Code* § 22-4-5 [2000] (as part of the Quarry Reclamation Act, requiring quarrying permits to contain the "names and addresses of the owners of the surface of the land to be quarried," the "names of surface and mineral owners of the surface area within five hundred feet" of the proposed quarry); *W.Va. Code* § 22-6-6 [1994] (requiring a driller, if plugging an oil or gas well, to "make reasonable effort to notify as soon as practicable the surface owner . . . of the land at the well location"); *W.Va. Code* § 22-6-30 [1994] (requiring the operator of an oil or gas well to "reclaim the land surface within the area disturbed in siting, drilling, completing or producing the well"); *W.Va. Code* § 22-6A-12 [2011] (restricting the drilling of any horizontal natural gas well near water wells or certain springs, unless driller has obtained and recorded "written consent of the surface owner").

We do not mean to suggest any particular interpretation of these statutes in this opinion. We cite them only for the obvious fact that the Legislature has repeatedly used the term "surface" when speaking of land titles, yet has presumed the meaning of the term is so plain and clear that no legislative definition was required.

> "Surface owner" means a person who owns an estate in fee in the surface of land, either solely or as a co-owner.[103]

In determining the definition of "surface," we find a model law crafted by the Uniform Law Commissioners to be instructive. The 1990 *Model Surface Use and Mineral Development Accommodation Act* offers the following definition of "surface":

> "Surface" means the exposed area of land, improvements on the land, subjacent and lateral support for land and structures, and any part of the underground actually used by a surface owner as an adjunct to surface use, such as root medium, groundwater, and construction footings.[104]

A law review examining the model law suggested that under this definition, the word "surface" "encompasses land, buildings, roads, subjacent and lateral support, groundwater, and that part of the subsurface used for surface-owned items such as trees and basements."[105]

We hold that the word "surface," when used in an instrument of conveyance, generally means the exposed area of land, improvements on the land, and any part of the underground actually used by a surface owner as an adjunct to surface use (for example, medium for the roots of growing plants, groundwater, water wells, roads,

---

[103] *W.Va. Code* § 22-7-2(a) (5) and (6) [1994].

[104] Uniform Law Commissioners, *Model Surface Use and Mineral Development Accommodation Act*, Section 2(7) [1990].

[105] Michelle Andrea Wenzel*, The Model Surface Use and Mineral Development Accommodation Act: Easy Easements for Mining Interests*, 42 Am.U.L.Rev. 607, 654 (1993).

basements, or construction footings). Because Syllabus Point 1 of *Ramage* holds otherwise, it is expressly overruled.[106]

H.

*Interpreting the 1907 Deed*

The 1907 deed at issue states that Florence Forman conveys to her brother Walter Forman her 1/7 interest "in the surface only" of a 225 acre tract, and later contains a recital which notes that "the coal and mining privileges hav[e] been previously sold."

Deeds are subject to the principles of interpretation and construction that govern contracts generally.[107] Deeds, like any other written agreements, are the repository of the contract. "Indeed, they are much more solemn than the usual unsealed agreement not acknowledged for record. They are a solemn declaration of all the covenants comprised in them or intended to be made between the parties, and none other. . . . A deed is a writing to prove and testify the agreement of the parties thereto to the things therein contained."[108] In short, "[a] deed is an instrument executed with formality, and imports full and complete exposure of the intent of the parties. It speaks the final agreement by the clearest and most satisfactory evidence."[109]

---

[106] We should also note that this holding modifies and expands upon the definition of "surface" adopted in Syllabus Point 1 of *Drummond v. White Oak Fuel Co.*, 104 W.Va. 368, 140 S.E. 57 (1927). *See supra*, note 61.

[107] *Arnold v. Palmer*, 224 W.Va. 495, 503, 686 S.E.2d 725, 733 (2009) (quoting *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544, 552 (2003)).

[108] *Southern v. Sine*, 95 W.Va. 634, 638, 123 S.E. 436, 437–38 (1924).

[109] *Donato v. Kimmins*, 104 W.Va. 200, 204, 139 S.E. 714, 715 (1927).

41

The 1907 deed is a written, contractual agreement reflecting the parties' intent. When the language used is plain and unambiguous, courts are required to apply, not construe, the contract. "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."[110] "The controlling factor in the interpretation of deeds, wills and contracts is the intention of the parties; and to arrive at that intention the whole instrument must be carefully scanned."[111] "In the construction of a deed or other legal instrument, the function of a court is to ascertain the intent of the parties as expressed in the language used by them."[112] Further guidance is provided in the principle that

> In construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith.[113]

---

[110] Syllabus Point 1, *Cotiga Development Company v. United Fuel Gas Company*, 47 W.Va. 484, 128 S.E.2d 626 (1962). *See also*, Syllabus Point 1, *Gibney v. Fitzsimmons*, 45 W.Va. 334, 32 S.E. 189 (1898) ("The legitimate purpose of all construction of instruments in writing is to ascertain the intention of the party or parties making the same, and, when this is determined, effect will be given thereto, unless to do so will violate some established rule of property.")

[111] *Murphy v. Van Voorhis*, 94 W.Va. at 477, 119 S.E. at 298.

[112] *Davis v. Hardman*, 148 W.Va. 82, 89, 133 S.E.2d 77, 81 (1963).

[113] Syllabus Point 1, *Maddy v. Maddy*, 87 W.Va. 581, 105 S.E. 803 (1921).

"Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous."[114] "If a writing is not ambiguous, it must speak for itself by its words, without aid of any oral evidence[.]"[115] "[T]he express language of the conveyance taken as a whole will overcome any supposed intention."[116]

We have emphasized that courts cannot rewrite a contract or deed that plainly expresses the parties' intent:

> It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.[117]

In divining the intent of the parties to a deed, a court must rely on the general and ordinary meanings of words.[118] "Mere informality in phraseology or clumsiness of expression does not make it ambiguous, if the language imports one

---

[114] Syllabus Point 9, *Paxton v. Benedum–Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917).

[115] Syllabus Point 1, in part, *Uhl v. Ohio River R. Co.*, 51 W.Va. 106, 41 S.E. 340 (1902). *See also*, *Sally-Mike Properties v. Yokum*, 175 W.Va. 296, 300, 332 S.E.2d 597, 601 (1985) ("Intention disclosed, if at all, by inference or implication, is not allowed to prevail over a different intention expressed in terms.").

[116] *Murphy v. Van Voorhis*, 94 W.Va. at 480, 119 S.E. at 299.

[117] Syllabus Point 3, *Cotiga Development Company v. United Fuel Gas Company*, 47 W.Va. 484, 128 S.E.2d 626 (1962).

[118] Syllabus Point 1, *McDonough Co. v. E.I. DuPont DeNemours & Co., Inc.*, 167 W.Va. 611, 280 S.E.2d 246 (1981) ("Parties are bound by general and ordinary meanings of words used in deeds."). *See also Hall v. Philadelphia Co.*, 72 W.Va. 573, 576, 78 S.E. 755, 757 (1913) ("Of course words in a contract or other instrument are to be accorded their primary meaning or sense, in the absence of anything in the context, showing a contrary or different intention.").

meaning or intention with reasonable certainty."[119] "Nowadays we construe deeds . . . by the four corners and get at the intention no matter that the word may not be entirely apt."[120]

We believe that the use of the word "only" in the 1907 deed to qualify the word "surface" "in that sense means 'solely' or the equivalent of the phrase 'and nothing else.'"[121] Florence Forman chose the words "surface only" as the subject of conveyance to mean nothing more than the surface, and to retain all the remainder of the property. The subsequent notation that the coal rights had previously been granted was not necessary, since they were not conveyed by the 1907 instrument. To hold otherwise – to hold, as the circuit court did, that the phrase "surface only" included rights to oil and gas – would be to give no significance to the words used by the parties to the deed. "When parties prepare a finely wrought instrument and use terms of legal distinction, their

---

[119] Syllabus Point 13, in part, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907). *See also*, *Meadows v. Belknap*, 199 W.Va. 243, 250, 483 S.E.2d 826, 833 (1997) ("We are not disturbed by the informality of the deed's textual placement and creation of Mrs. Perrine's life estate. Our task is not to find a technicality that would support the improbable. Ours is a task of discerning the intent of the parties to the deed at the time of its making.")

[120] *Preston v. White*, 57 W.Va. 278, 283, 50 S.E. 236, 238 (1905). *See also*, Syllabus Point 2, *Leckie v. Bray*, 91 W.Va. 456, 113 S.E. 746 (1922) ("No addition to the terms of a written contract, or transposition or modification thereof, can be made by construction, unless it has foundation in the written words of the paper or in a reasonable and fair implication arising out of such words or some provision thereof or purpose expressed by it.").

[121] *Shell Oil Co. v. Manley Oil Corp.*, 124 F.2d at 715.

44

classifications should be given great weight as the intentional expression of their purpose."[122]

The Supreme Court of Idaho proffered the correct way that a deed such as the 1907 deed should be read:

> The correct interpretation of a deed which conveys the surface and then lists specific reservations is this: the reservations relate only to that which was first conveyed, the surface. Without a construction in this manner, the insertion of the word surface becomes meaningless and only the reservation is of any import. When the grantor conveys the surface he means just that—a conveyance of the surface, and to hold otherwise controverts the clear intention of the grantor.[123]

One other point bears mentioning. The respondent places much emphasis on evidence before the trial court that there was no oil or gas production in Preston County in 1907.[124] He then argues that this lack of production establishes that Florence and Walter Forman could not have had oil and gas in mind when they drafted the 1907 deed, and Florence could not have intended to retain those minerals. We disagree. It is immaterial what minerals were known to be under the land in 1907, or were not known; the only question is whether it was the grantor's intention to convey or to reserve those

---

[122] *Morriss v. First Nat. Bank of Mission*, 249 S.W.2d 269, 275 (Tex.Civ.App. 1952).

[123] *Stucki v. Parker*, 703 P.2d at 695.

[124] At the same time the respondent claims oil and gas were unknown in Preston County in 1907, he vigorously relies on *Ramage v. South Penn Oil Company*, which involved an 1889 deed for oil and gas extraction approximately 30 miles away in adjoining Monongalia County.

minerals.[125]  The language of Ms. Forman's deed to her brother is paramount as it is clear and unambiguous: it conveyed the surface only.  To hold otherwise would be to alter the language of the deed and, by construction, enlarge the estate conveyed by the deed.

We conclude that the circuit court erred in finding that the 1907 deed was ambiguous.  The deed clearly conveyed from Florence Forman to Walter Forman her share of "the surface only" to the 225 acre tract, and reserved to Ms. Forman the remainder of the tract.  Accordingly, as the successors to Florence Forman, the petitioners are owners of a portion of her 1/7 interest in the minerals (other than coal) underlying the tract.

## IV.
## CONCLUSION

The circuit court's November 9, 2011, order is reversed, and the case is remanded to the circuit court for any further necessary proceedings.

Reversed and remanded.

---

[125] *Waugh v. Thompson Land & Coal Co.*, 103 W.Va. 567, 572, 137 S.E. 895, 897 (1927) ("But it is immaterial what minerals were known to be under the land, or were not known to be thereunder, if it was the intention to convey or reserve the mineral."); *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984) ("The knowledge of the parties of the value, or even the existence of the substance at the time the conveyance was executed has been found to be irrelevant to its inclusion or exclusion from a grant of minerals.").